NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 14 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HARBOR MISSIONARY CHURCH CORPORATION, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> CITY OF SAN BUENAVENTURA; JEFFREY LAMBERT, in his official capacity as Community Development Director; MARK WATKINS, in his official capacity as City Manager; CHERYL HEITMANN, in her official capacity as Mayor and presiding City Councilmember; ERIK NASARENKO, in his official capacity as Deputy Mayor and City Councilmember; NEAL ANDREWS, in their official capacities as City Councilmembers; JAMES L. MONAHAN, in their official capacities as City Councilmembers; CARL E. MOREHOUSE, in their official capacities as City Councilmembers; MIKE TRACY, in their official capacities as City Councilmembers; CHRISTY WEIR, in their official capacities as City Councilmembers; DAN LONG, in his official capacity as Chair of the Planning | No. 14-56137 <br><br> D.C. No. 2:14-cv-03730-R-VBK <br><br> MEMORANDUM[*] |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Commission; NANCY FRANCIS, in her official capacity as Vice Chair of the Planning Commission; CHRISTOPHER BECK, in their official capacities as Planning Commissioner; SCOTT BOYDSTUN, in their official capacities as Planning Commissioner; LAURA DUNBAR, in their official capacities as Planning Commissioner; DAVID FERRIN, in their official capacities as Planning Commissioner; RONDI GUTHRIE, in their official capacities as Planning Commissioner,

Defendants - Appellees.

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 2, 2015
Pasadena, California

Before: PREGERSON, KLEINFELD, and NGUYEN, Circuit Judges.

In 2008, Harbor Missionary Church ("the Church") commenced Operation Embrace to provide limited care and religious services for homeless men and women living in Ventura (officially the City of San Buenaventura) ("the City"). In January 2013, the City told the Church that it needed to obtain a conditional use permit to continue its homeless ministry. In February 2013, the Church applied for a conditional use permit, which the City denied. The Church then filed suit

claiming that the City's denial infringed on its religious practices and, pending the lawsuit, sought a preliminary injunction to keep open its ministry to the homeless. The district court denied the Church's request, holding that a preliminary injunction was not appropriate because the Church faced no substantial burden in having to move its "homeless services" to another location, and, even if it did, the complete denial of the permit was the least restrictive way to mitigate the City's safety concerns. We reverse the district court's substantial burden determination and its least restrictive means analysis, and remand.

## BACKGROUND

In 2004, the Church purchased real property already permitted by the City to operate both as a church and a daycare center. In 2008, the Church started Operation Embrace on this property to provide spiritual guidance and other basic needs to the City's homeless men and women—offering religious teachings, worship music, prayer, clothing, food, showers, counseling, and other support. The Church believes that its homeless ministry is part of its religious duty to serve "the least of these" among us (citing Matthew 25:34–46). The Church also believes that providing showers and clothing and sharing meals with homeless men and women—when done within the walls of the Church under a religious mandate—constitute sacred duties.

Operation Embrace drew in homeless individuals from surrounding areas, which prompted concerns from the neighborhood. Residents reported incidents involving threats, trespassing, public nudity, and substance abuse. The Church took a variety of steps to address these concerns, including employing a security guard, enforcing a strict no-loitering rule, requiring identification, escorting out of the neighborhood anyone not admitted to Church services, coordinating regularly with social service agencies, strengthening its neighborhood patrols, maintaining a public hotline for complaints, and coordinating its hours of operation with the elementary school.

In January 2013, the City told the Church that it needed a conditional use permit to continue Operation Embrace. In February 2013, the Church applied for a permit. City staff members, after studying the issue, meeting with Church officials, and hosting a public meeting, issued a report recommending that the City grant the permit subject to conditions proposed by the staff. Despite these recommendations, the City Planning Commission denied the Church's request for a conditional use permit flat-out.

The Church then filed suit in the district court claiming that the City's denial of a conditional use permit violated the Church's rights under the Religious Land

Use and Institutionalized Persons Act ("RLUIPA")[1] and the First Amendment of the United States Constitution.[2] The Church asked the court to preliminarily enjoin the City from enforcing regulations that would shut down the Church's homeless ministry, pending the outcome of the lawsuit.

The district court determined that the Church was unlikely to succeed on its RLUIPA claim and therefore denied the preliminary injunction. The district court held that the Church failed to show that the denial of a conditional use permit constituted a substantial burden on its religious exercise because the Church could continue its traditional religious activities at the church, while conducting its "homeless services" at another location at a distance from the neighborhood. The district court also held that, even if the burden on the Church's religious exercise were substantial, excluding Operation Embrace from the neighborhood was the least restrictive means of advancing a compelling governmental interest in public health and safety.

---

[1] RLUIPA provides that a government land-use regulation "that imposes a substantial burden on the religious exercise of a . . . religious assembly or institution" is unlawful "unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; . . . and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a).

[2] RLUIPA is more protective of religious practice than the First Amendment. *See Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002). Accordingly, we only need to determine whether the Church established a likelihood of success on its RLUIPA claim.

The district court erred in its analysis by minimizing the burden imposed on the Church's free exercise of religion. The district court also erred in failing to properly consider the conditions recommended by the City's staff when it determined that a complete denial of the conditional use permit was the least restrictive means to achieve the City's compelling interest in public safety.

## ANALYSIS

This court has jurisdiction over the Church's interlocutory appeal from the district court's order pursuant to 28 U.S.C. § 1292(a)(1). We review a district court's decision regarding a preliminary injunction for abuse of discretion. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999).

A party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) a preliminary injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1. *Likelihood of Success on the Merits*

To succeed on a RLUIPA claim, "the plaintiff must demonstrate that a government action has imposed a substantial burden on the plaintiff's religious

exercise." *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011); *see* 42 U.S.C. § 2000cc(a)(1). Once the plaintiff has shown a substantial burden, the government must show that its action was "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc(a)(1)(B).

a. *Substantial Burden*

The City's denial of the conditional use permit prevents the Church from conducting its homeless ministry, an integral part of its religion, without suffering substantial delay, uncertainty, and expense. Therefore, the district court erred in determining that the Church's religious exercise was not substantially burdened by denial of a conditional use permit.

In a declaration, the pastor of the Church, Sam Gallucci, cites to the Bible at Matthew 25:34–46 as one of the sources for the Church's belief that its homeless ministry is part of its religious duty to feed the hungry and clothe the naked. Gallucci also cites to the mother Church's position papers, which provide that the Church should exercise "Christian compassion" towards the oppressed, poor, and hungry. The Church asserts that its religion calls for it "to provide for both spiritual and temporal needs together." The district court erred by questioning the validity of the Church's religious beliefs and by determining that its homeless

ministry could be divided piecemeal when the Church insisted on the importance of keeping its homeless ministry as a whole at the same location. *See Int'l Church of the Foursquare Gospel*, 673 F.3d at 1069 ("[W]hile a court can arbiter the sincerity of an individual's religious beliefs, courts should not inquire into the truth or falsity of stated religious beliefs." (citing *United States v. Ballard*, 322 U.S. 78, 86–87 (1944)).

Further, the City's denial of a conditional use permit prevents the Church from conducting its homeless ministry at its current location. Currently, if the Church wishes to conduct its homeless ministry—a ministry the Church believes to be an integral part of its religious exercise—the Church must relocate. In addition to selling its current property, the Church would have to raise an estimated $1.4 million to relocate, an expense the City does not dispute. The substantial cost associated with relocating the site of the Church demonstrates that the denial of the conditional use permit substantially burdens the Church's religious exercise. *See id.* at 1068 ("[W]hen the religious institution has no ready alternatives, or where the alternatives require substantial delay, uncertainty, and expense, a complete denial of the [religious institution's] application might be indicative of a substantial burden." (alteration in original) (quotation omitted)).

b. *Least Restrictive Means*

Because the Church has shown a substantial burden, the City must show that it employed the least restrictive means available to further a compelling governmental interest. *Id.* at 1066. The district court did not err in finding that the City had a compelling interest in promoting public safety and in preventing crime. *See Schall v. Martin*, 467 U.S. 253, 264 (1984) (holding that protecting the community from crime is a compelling interest). But the district court failed to apply the proper analysis when it determined that the City used the least restrictive means to achieve this goal.

At the City's suggestion, the Church applied for a conditional use permit to continue its homeless ministry. The application detailed a wide variety of measures the Church had implemented to address the concerns of its neighbors. The City's staff charged with assessing the Church's application recommended that the use permit be approved, subject to additional conditions to further mitigate some of the outreach program's impacts on the local community. The City concedes that it considered such a conditional use permit as a potentially less restrictive way to achieve the City's interests. Though the record is mixed, evidence indicates that implementing these conditions might have achieved the City's health and safety interests, and that the Church was perhaps willing to comply with some of the suggested conditions. Nevertheless, the district court

failed to give appropriate consideration to the viability of such a conditional use permit when, in a single sentence, it concluded summarily that Operation Embrace was "so incompatible" with the neighborhood and so detrimental to public safety that outright denial was the City's only option.

The district court abused its discretion when it concluded, without analysis, that a complete denial of the conditional use permit was the least restrictive means by which the City could further its compelling interest in public safety. On remand, the district court should make factual findings, after such proceedings as may be necessary, about what conditions, if any, the Church would or would not comply with if the City had granted a conditional use permit. The court should also detail why the conditional use permit recommended by the City's staff would or would not sufficiently protect the neighborhood from any negative effects shown to be the result of the Church's ministry to the homeless.

## CONCLUSION

For the above reasons, we reverse the district court's denial of the preliminary injunction and remand for further proceedings consistent with the views herein expressed.

**REVERSED AND REMANDED.**